Jefferson Auto Parking Co., Inc. v. Commissioner.
Jefferson Auto Parking Co. v. Commissioner
Docket No. 85531.
United States Tax Court
T.C. Memo 1963-266; 1963 Tax Ct. Memo LEXIS 79; 22 T.C.M. (CCH) 1341; T.C.M. (RIA) 63266; September 27, 1963
*79 Samuel L. Siegel, 375 Park Ave., New York, N. Y., for the petitioner. Robert A. Trevisani, for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency of $17,964.32 in petitioner's income tax for the calendar year 1955. The issues are (1) whether deposits under a defaulted contract for the sale of real estate were received without restriction as payment by petitioner in 1955 rather than 1956 and, if so, (2) whether such payment was taxable as ordinary income. Findings of Fact Some of the facts are stipulated and are found accordingly. Petitioner is a corporation incorporated under the laws of New York State. It filed its income tax returns for calendar years 1955 and 1956 on an accrual basis with the district director of internal revenue, Upper Manhattan district, New York, New York. For 1955 petitioner reported taxable income of $12,110.53, all from rent, and paid Federal income tax of $3,633.16. During 1955 petitioner owned two adjacent parcels of land in New York City, one acquired in 1941 at a cost of $47,841.82 and the other in 1953 at a cost of $317,512.35. Petitioner leased this land to Sportsmens *80 Parking Lot, Inc., and derived rental income therefrom during 1955. On May 5, 1955, petitioner entered into a written contract with Palm Realty Corporation, a New York corporation (hereinafter referred to as Palm), to sell the two parcels of land to Palm for $750,000, payable as follows: $35,000 in cash upon signing of the contract; $569,082 in cash upon delivery of the deed; and $145,918 by assuming an existing first mortgage on the property. Delivery of the deed was set for August 5, 1955 by the contract, which provided that "[time] is of the essence." The contract continued: * * * However the purchaser shall have the right to postpone the closing date until September 6, 1955 at the same time and place by delivering to the seller his check, subject to collection, for $5,000 on or before July 26, 1955 with a request for such adjournment of the closing date. The said payment of $5,000 shall be applied to the purchase price on the closing date. In the event of such adjournment to September 6, 1955, time shall be of the essence. The contract contained further provisions, identical to the one above except as to date, allowing Palm to postpone closing to October 5, 1955, November 7, 1955, December 5, 1955, and *81 January 5, 1956 upon delivery of a check for $5,000 for each postponement. In each case it was provided that "time shall be of the essence." The contract stated that it could "not be changed orally." Palm paid petitioner $35,000 upon execution of the contract and paid petitioner $5,000 to extend the closing date from August 5, 1955 to September 6, 1955. Palm made no other payments for postponement of the closing date of the contract. Palm did not perform under the contract by September 6, 1955 and was unwilling to make additional payments to extend the closing date although it was interested in continuing to try to perform under the contract. Palm was proposing to build a hotel on the property but did not have detailed plans and was unable to arrange financing. A few days prior to September 6, 1955, petitioner orally agreed to postpone the closing date without any additional payments while Palm continued to solicit financing. No new date for closing was set. Palm acted upon the extension by continuing to seek financing for the purchase. About the middle of December 1955, Palm informed petitioner that it was unable to obtain financing for the project. Petitioner then advanced *82 a proposition whereby Palm could take title on a temporary basis while continuing to seek financing to complete payment. Palm would not lose the benefit of the deposits it had made. Palm wanted time to consider the proposition because of the holiday season and other intervening matters. A few days after the beginning of 1956, Palm advised petitioner that it was impractical for it to accept petitioner's proposition. Petitioner reported the $40,000 forfeited deposit as a long-term capital gain on its income tax return for calendar year 1956. The only other income reported by petitioner on its 1956 return was from rent. Petitioner did not during 1955 nor at any time prior thereto engage in the business of buying and selling real estate. Palm did not default on the contract during 1955 and petitioner did not obtain the unrestricted right to retain the sums deposited by Palm at any time during that year. Opinion The parties are in agreement that the consequences of their actions to petitioner vendor and its vendee are to be governed by the applicable local law. Under the rule in effect in New York petitioner's conduct was such that it could not have placed its vendee in default *83 prior to the end of 1955, the year before us. The negotiations [1] extending to the very end of 1955 would have estopped petitioner from claiming that the vendee was in default and hence that it was lawful for it to retain the down payment free from the restrictions of the contract of sale. *84 We think that, under these circumstances, the defendant cannot escape responsibility on the ground that the extension of the time of performance by the plaintiff was not in writing. That was a stipulation which the parties, for their mutual convenience, could have waived or disregarded. * * * [A] situation had arisen * * * that had not been foreseen at the time of the execution of the contract, and it would seem to be only reasonable to say that the parties to this contract could have accommodated themselves to this new situation without writing. * * * The defendant could, no doubt, have insisted upon strict performance of the contract according to the written instrument, and, had it assumed that position, the plaintiff would then know where it stood * * *. It is undoubtedly true that in many cases of mercantile contracts time is of the essence. * * * But * * * the time of delivery was changed in the interest and for the accommodation of both parties. It was, therefore, in the power of the parties to change the terms of the contract by parol as to time. It is found that they did actually make the change and the defendant, under the circumstances of the case, is estopped from setting *85 up the defense of nonperformance as to time. [.] * * * It makes no difference, as we conceive, what the character of the original contract may be, - whether one within or outside the statute of frauds. The rule is well understood that, if there is forbearance at the request of a party, the latter is precluded from insisting upon nonperformance at the time originally fixed by the contract * * *. * * * [Where] one party to a contract, before the time for performance by the other party has arrived, consents, upon his request, to extend the time of performance, he must be presumed to know that the other party relies upon the consent; and until he gives notice of withdrawal he has no just right to consider the latter in default, although meanwhile the contract time has elapsed. We think the principle of equitable estoppel applies in such case. * * * [.] See also , where it was "held that, where the time of payment under a contract had been *86 extended by parol and the party required to make the payment had acted upon such extension, the party waiving such time of payment cannot consider the debtor in default unless he withdraws the waiver before the time of payment has arrived." . In a concurring opinion there, Judge, later Mr. Justice, Cardozo said: * * * There may be procurement or encouragement of a departure from literal performance which will forbid the assertion that the departure was a wrong. * * *
* * * The buyer * * * may not summarily rescind because of the breach which he encouraged. * * * [Ibid. 266, 267.] The situation was hence comparable to that in , affd. (C.A. 4, 1938), certiorari denied , where we said (at pp. 198-199): The taxpayer argues that, since the funds were received in 1930 and 1931 with the right to retain them forever and to use them without restriction, they should have been accured as income for those years. Although they were received without any obligation to return them, *87 there was one condition attached to their receipt. That is, they had to be applied against the purchase price in case the option was exercised. That one condition is the determining factor in this case. Until it was removed in 1933, the question of the liability of the recipient for income tax upon the payments had to be held in abeyance. Similar cases of forfeiture arise under contracts of sale and are treated the same way. ; ; ; ; ; ; . This conclusion is required whether we treat the extension granted by petitioner as indefinite, as respondent contends, [2] or as extending to the final date specified in the contract, January 5, 1956. In either case, the default did not occur in 1955. There is no issue here as to the correctness of the treatment in 1956. *88 Decision will be entered for the petitioner. Footnotes
1. Petitioner's attorney, Sainer, testified: My first meeting with Mr. Harwitz, since he was the attorney, had to do with a proposition that I was making to him to resolve our difficulties here so that we could actually sell the property to Palm Realty. And I outlined some plans to Mr. Harwitz, which he said he thought I ought to take up with Mr. Zuch; which I then did, two days later. And I was advised at those meetings that shortly after the first of the year they would tell me if they could carry this thing out in the manner which would enable them to take title. The vendee's attorney stated: And he [Sainer,) suggested to me a proposition which would enable my client to take title in accordance with the contract, and not lose the deposit. It sounded feasible to me, and I said, "Well, this is something that will have to be discussed with Mr. Zuch." And we arranged an appointment a few days later, and we discussed the entire proposition. And then Mr. Zuch wanted time to consider this thing. And this was the latter part of December 1955 and the holidays were approaching and other matters intervened. * * *↩
2. "Respondent has and is asking the Court to find as a fact that the extention of time granted by the petitioner was of an indefinite duration * * *." Brief 24.↩